D. Maimon Kirschenbaum
Michael DiGiulio
JOSEPH KIRSCHENBAUM LLP
32 Broadway, Suite 601
New York, NY 10004
(212) 688-5640
(212) 981-9587 (fax)

*Attorneys for Plaintiff*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**
**---------------------------------------------------------x**

| | |
|---|---|
| **ANA PAVLOSKA,** | **CASE NO. 24-CV-6882** |
| **Plaintiff,** | |
| **v.** | **FIRST AMENDED COMPLAINT** |
| **IHMS, LLC d/b/a THE PIERRE HOTEL,** | **JURY TRIAL DEMANDED** |
| **Defendant.** | |

**---------------------------------------------------------x**

Plaintiff alleges as follows:

## INTRODUCTION

1.      The Pierre Hotel's website boasts: "Ever since The Pierre opened in 1930, it has been revered as both a quintessential monument to New York City grandeur and an outstanding archetype of service excellence."  In reality, The Pierre is a complete mess and grossly mistreats its guests and staff alike.

2.      Among other things, The Pierre continues to employ a head of security who (a) several times attempted to sexually assault Plaintiff Ana Pavloska ("Plaintiff" or "Ms. Pavloska"), (b) brags openly about having sex with employees inside co-op apartments managed by The Pierre without the knowledge of the apartments' owners, and (c) recently called a hotel guest a "dirty Jew" and had him removed from the property.

3.      The Pierre also continues to employ a housekeeping supervisor who sent unsolicited naked pictures of himself to a Pierre guest, who was deeply disturbed and complained about the sexual harassment.

4.      Plaintiff presented to The Pierre conclusive evidence of this egregious misbehavior, including her own mistreatment.

5.      Plaintiff raised these issues with Executive Vice President of Operations, South India, International & Expressions Prabhat Verma and the current hotel manager of the Pierre.

6.      Plaintiff was instructed to keep her allegations quiet.  Astonishingly, Mr. Verma told Plaintiff not to pursue any action with respect to the head of security using co-op apartments for sex, because if the co-op board learned of this behavior, it could significantly impact The Pierre's status as manager of the co-op property.

7.      Instead of remedying the rampant debauchery, illegal conduct, and Plaintiff's mistreatment, Defendant commenced an intense campaign to humiliate Plaintiff and destroy her career and have allowed the perpetrators of this sick behavior to continue their misdeeds with no consequence.

8.      Ms. Pavloska brings this action to vindicate her civil rights, remedy the injuries she suffered as a result of Defendant's outrageous conduct, stop this continuing outrageous and illegal conduct, and protect her collogues and co-workers from Defendant's hostile work environment.

**JURISDICTION AND VENUE**

9.      This Court has original federal question jurisdiction under 28 U.S.C. § 1331 because this case is brought under Title VII, 42 U.S.C. § 2000e. This Court has supplemental jurisdiction over the New York state law and common law claims, as they are so related to the

claims in this action within the Court's original jurisdiction that they form part of the same case or controversy under Article III of the United States Constitution.

10.     Venue is proper in this District because Defendant conducts business in this District, and the acts and/or omissions giving rise to the claims herein alleged took place in this District.

## THE PARTIES

11.     Defendant IHMS LLC d/b/a The Pierre Hotel ("Pierre Hotel", "The Pierre" or "the Hotel") is a New York limited liability corporation that owns and operates the Pierre Hotel, which is a luxury hotel located at 2 East 61st Street, New York, New York. The Pierre Hotel is part of IHCL, (i.e., Indian Hotels Company Limited), which is an international hotel group doing business under the name The Taj Hotels.

12.     The Pierre Hotel, opened in 1930, claims to be "both a quintessential monument to New York City grandeur and an outstanding archetype of service excellence."

13.     The Pierre Hotel also manages the co-op apartments located at 2 East 61st Street, New York, New York. That is, there are many privately owned co-op apartments in the same building as the Pierre Hotel, and Defendant operates as the managing agent, including managing security, for the co-op.

14.     Plaintiff Ana Pavloska has worked for Defendant at the Pierre Hotel from May 2016 through 2024. Ms. Pavloska excelled in her roles and was given numerous awards and accolades for her work. Defendant promoted her to Guest Relations Manager in July 2023.

## FACTS

15.     Ms. Pavloska began working for the Pierre Hotel in May 2016 as an Assistant Front Desk Manager. Because of her excellent work, within a few months she was promoted to Front

Desk Manager. As a Front Desk Manager, Ms. Pavloska was tasked with providing excellent customer service to all of the guests at the Pierre Hotel and ensuring all of their needs were met. Ms. Pavloska excelled in this position and built deep strong relationships with many of the returning guests at the Hotel. In July 2023 she was promoted to Guest Relations Manager.

16.      Throughout her employment, Ms. Pavloska has received strong performance reviews. She takes seriously her responsibility to the guests and to the Pierre Hotel to ensure that the level of service provided is of the highest quality and that the standards of performance of her team are met and exceeded. Ms. Pavloska's work was so outstanding that Defendant awarded her entry into the "Executive Vice President's Club" for the The Taj Hotels. She was the only employee at the Pierre Hotel to receive that honor.

17.      Despite Ms. Pavloska's deep commitment to the Pierre Hotel, Defendant created a workplace environment rife with sexual harassment and abuse and knowingly tolerated powerful supervisors – including the head of security at the Hotel – to sexual harass and abuse female subordinates and to unlawfully trespass in apartments to have sex with various women, including female subordinates.

18.      Frank Piccolo is the Director of Security and Guest Services at the Pierre Hotel. Mr. Piccolo has worked in security at the Pierre Hotel for over 16 years. He currently oversees all of security for both the hotel and the co-op that owns the building in which the hotel operates. As such, Mr. Piccolo is responsible for security for the entire building located at 2 East 61st Street. Mr. Piccolo's roles as head of security gave him authority over the front of house staff, including Ms. Pavloska. In fact, Mr. Piccolo represented to guests that he was Ms. Pavloska's boss.

19.      It is well known among the Pierre Hotel staff that Mr. Piccolo routinely sexually harasses staff members, including Ms. Pavloska.

20.    Mr. Piccolo's sexual harassment of Ms. Pavloska first began around 2020 and has continued through the present.

21.    In 2021, Mr. Piccolo, after learning of Ms. Pavloska's divorce, told her not to worry because he could "satisfy all her needs," that he they should be "friends with benefits," and he could be her "sugar daddy." This made Ms. Pavloska extremely uncomfortable, and she told him to stop saying these things. Instead, Mr. Piccolo doubled down and told her that he could use his shoulder to cry on and that, in exchange, he could be her "big daddy," suggesting a sexual quid pro quo. When Ms. Pavloska flatly refused him, Mr. Piccolo told her to "stop being such a bitch."

22.    In another incident, Mr. Piccolo approached Ms. Pavloska from behind when she was wearing a professional suit for work. Mr. Piccolo raised his hand in an exaggerated fashion and threatened to slap her butt, and looked into Ms. Pavloska's eyes and asked her mockingly, "what am I going to do? Do you want me to?" Ms. Pavloska told him "Don't touch me." Mr. Piccolo proceeded to sexually mock Ms. Pavloska by pretending to slap her butt.

23.    Ms. Pavloska suffered similar sexual humiliations throughout her employment at the hotel.

24.    However, in the fall of 2023, Mr. Piccolo's sexual harassment of Ms. Pavloska intensified.

25.    In late November 2023, Mr. Piccolo entered Ms. Pavloska's office and closed the door, which is locked from the outside when it is closed. Mr. Piccolo approached Ms. Pavloska while she was sitting at her desk. Mr. Piccolo then took off his pants and underwear and thrusted his penis towards Ms. Pavloska. He said, "come on Ana, just try it one time." Ms. Pavloska was disgusted, humiliated, and deeply embarrassed. She told Mr. Piccolo to put his clothes on and to leave her alone.

26.     Mr. Piccolo continued to thrust his penis towards her and to laugh. Ms. Pavloska told him to stop and that he should never do this again. Mr. Piccolo mockingly asked Ms. Pavloska, "what are you doing to do about it?" He told her that if she told anyone about this he would plant something illegal in her locker and get her fired. He told her that he was friends with the police, that his brother was a policeman, that he is protected by the police, and that no one would believe her over him because she was just an immigrant. He told her, "who would believe you?"

27.     A co-worker then knocked on the door of the office. Mr. Piccolo said to "hold on," and he quickly pulled up his pants. Ms. Pavloska moved to answer the door. When Ms. Pavloska answered the door, the co-worker saw that something was amiss in the office. The co-worker proceeded to tell other co-workers that Mr. Piccolo and Ms. Pavloska were sleeping together, which was untrue.

28.     Ms. Pavloska immediately complained about Mr. Piccolo's behavior to her direct supervisor, Niall Corkery, Director of Front Office. Mr. Corkery told Ms. Pavloska that she was "making things up" and that she was overreacting, effectively confirming Mr. Piccolo's assertion that no one would believe Ms. Pavloska if she reported him.

29.     Ms. Pavloska was extremely disturbed and traumatized by Mr. Piccolo's actions and Mr. Corkery's response.

30.     It is well known among the Hotel's staff that Mr. Piccolo routinely has sex with women at the hotel, including sex with some of the Hotel's low level staff members. As head of security, Mr. Piccolo knows where all the cameras are in the hotel and knows what parts of the building are not recorded. Mr. Piccolo also knows when homeowners of the co-op apartments are not staying at their apartments. Mr. Piccolo routinely brings women to empty co-op apartments to

have sex with them when those tenants are not in town. This is all well-known because Mr. Piccolo

is not discrete in his actions and openly brags about it to co-workers.

31.     For example, in 2020, when the Pierre Hotel was operating in a limited capacity

due to Covid-19, Mr. Piccolo routinely brought women to the co-op apartments to have sex with

them and then bragged openly in the lobby of the Hotel to the bellmen, doormen, and security

agents in front of Ms. Pavloska. For instance, Mr. Piccolo once bragged that the woman he just

had sex with was "a dumb whore" who "let me play with every part of her body." It was unclear

if the woman was a Pierre employee or unaffiliated with the Hotel. He openly bragged that he just

had anal sex with a woman in a co-op apartment and that he was "gonna get all her shit out of her."

Mr. Piccolo further said that he did not use condoms and that he was happy because his "wife

would never allow me to do that to her." When Ms. Pavloska protested and told Mr. Piccolo to

stop doing this and to stop talking about it, Mr. Piccolo called Ms. Pavloska a "little baby" and

told her if she wanted, he could be her "sugar daddy."

32.     More recently, in December 2023, Ms. Pavloska witnessed Mr. Piccolo enter a co-

op apartment with a female employee who worked in the Hotel's kitchen. Ms. Pavloska told Mr.

Piccolo that he should not enter the apartment, and Mr. Piccolo laughed at her and said, "I'm just

going to show her the great views of the Park" and proceeded to enter the apartment and have sex

with the kitchen employee.

33.     Ms. Pavloska immediately complained to Mr. Corkery about Mr. Piccolo illegally

trespassing in co-op apartments and having sex there. In response, Mr. Corkery told her that she

was "making stuff up." Mr. Corkery told Ms. Pavloska that he "didn't want to hear about it" and

that he "didn't want to be involved." Mr. Corkery then threatened Ms. Pavloska, telling her that if

she made a formal complaint about this to Human Resources without any hard evidence, she would

be suspended and would get into a lot of trouble. Mr. Corkery's response was illegal, unethical, and disturbing.

34.    Later, Mr. Piccolo bragged to Ms. Pavloska that he had sex with the kitchen employee in the apartment. Mr. Piccolo further told Ms. Pavloska that he "fucked about ten times in the co-op up here," and that "a couple weeks ago I fucked" an employee in a co-op apartment. Mr. Piccolo told Ms. Pavloska that "I'm fixed, I cum in the pussy, no problem." Mr. Piccolo said that he "had to take care of this," gesturing towards his penis, as an explanation for why he continually trespassed in the co-op apartments to have sex. Mr. Piccolo further stated that he has sex on "the floor, the couch" and knows where to have sex so as not to get caught. He even joked that he could not get caught because a specific apartment owner was dead, so "he won't know." Ms. Pavloska was shocked, disgusted, dismayed, and embarrassed by what Mr. Piccolo told her.

35.    In January 2024, Ms. Pavloska received an email from a hotel guest who was extremely disturbed and threatening to sue the Pierre Hotel because a member of the hotel staff – Peter Vadella, the Housekeeping Supervisor – had sent the guest naked pictures of himself in an attempt to solicit sex from the guest. Included in this email were the naked pictures of Mr. Vadella.

36.    Ms. Pavloska immediately reported the email and incident to the General Manager, Francois Luiggi.  The next day, Mr. Luiggi, Mr. Corkery, and Mr. Piccolo approached Ms. Pavloska and proceed to thrust the naked photos of Mr. Vadella into Ms. Pavloska's face, laughing and joking about the size of Mr. Vadella's penis. They mockingly asked Ms. Pavloska, "why would you send a dick pic if you have a small dick?" and "did you see the size????" Ms. Pavloska was humiliated, embarrassed, and deeply disturbed by her supervisors' actions.

37.    Later, Mr. Vadella approached Ms. Pavloska and accosted her for "showing" people the naked pictures of himself that he had sent to the guest. This response was completely

outrageous. Ms. Pavloska complained about this, but Defendant did not discipline Mr. Vadella, and he is still the Housekeeping Supervisor at the Pierre Hotel.

38.     In February 2024, a Jewish guest at the Pierre Hotel was asked by the management of the hotel to pack up his belongings and leave. The Jewish guest was speaking with Ms. Pavloska at the front desk about his options to stay and whether he could resolve the dispute in some fashion. Mr. Piccolo approached the guest and began screaming at him in the lobby and yelling in his face to vacate the premise. Mr. Piccolo called the guest a "dirty Jew" and told him that the hotel was not going accept his "dirty money." The guest begged Ms. Pavloska to help him and to tell Mr. Piccolo to stop harassing him, and in response Mr. Piccolo told the guest that "Ana is not my boss, I am Ana's boss."

39.     The Jewish guest then retreated to his room to collect his things. Ms. Pavloska went up to the room to ensure an orderly departure. Mr. Piccolo proceeded to verbally berate and harass the guest. Eventually, Mr. Piccolo called the police to come to the hotel to escort the guest out. Mr. Piccolo lied to the police and told them that the guest had been destroying hotel property and yelling at and harassing the hotel staff, which was not true. The guest left the hotel before the police arrived.

40.     Ms. Pavloska immediately complained to Mr. Luiggi that Mr. Piccolo had mistreated the guest in many ways, including by calling him a "dirty Jew." Mr. Luiggi ignored her complaints and told Ms. Pavloska "not to get involved."

41.     In early March 2024, Ms. Pavloska entered the uniform room in the basement where Mr. Piccolo was sitting. This is a common area, but it has no video cameras. When Ms. Pavloska entered the room, Mr. Piccolo was sitting in a chair with his pants down, wearing only boxer briefs on his lower body. Mr. Piccolo immediately asked Ms. Pavloska, "You want it? You want it? Just

take it" and "look at this size" and began thrusting his penis upwards towards her. Ms. Pavloska told Mr. Piccolo that this was inappropriate behavior. Another co-worker entered the room, and Ms. Pavloska told Mr. Piccolo that he was in a common area and needed to act appropriately. In response Mr. Piccolo laughed and said this co-worker "knows me and knows that I'm a pervert." Below is a photograph of Mr. Piccolo taken by Plaintiff at the end of the incident:



42.    Ms. Pavloska immediately complained to Mr. Corkery and Christian Hommerich, the Hotel Manager (at the time). Their response was to accuse Ms. Pavloska of making things up. They told Ms. Pavloska that she was not allowed to take any photos of any employees, it was against the law to do so, and if she took a photo of any employee she would be arrested. They threatened Ms. Pavloska that if she reported the incident to HR, she would be suspended and could be fired for bringing a false accusation. Mr. Corkery told her not to "mess things up."

43.    Later in March 2024, Mr. Piccolo again sexually harassed, and attempted to sexually assault, Ms. Pavloska. In this incident, a hotel guest contacted Ms. Pavloska because they had left a very expensive necklace in their room at the hotel. Defendant's policy requires that one guest services employee and one security employee respond together when searching for lost guest

items. Mr. Piccolo told Ms. Pavloska to come with him up to the room to look for the necklace. Once again, when they entered the hotel room, Mr. Piccolo closed the door, although the company policy was to keep doors open, and they proceeded to search the room thoroughly for the necklace.

44.     At one point, Ms. Pavloska was searching for the necklace under the mattress, and was lying down in a prone position. Mr. Piccolo approach Ms. Pavloska and came very close to her face, breathing into her mouth, and asked her "don't you want some of this?" He then physically and sexually assaulted her, grabbing her clothing and attempting to pull them off of her. When he was trying to have sex with Ms. Pavloska, he told her: "if you try me once, you will try me a second time…. you will be begging for more" and "trust me, it's just us, it's just you and me, come on." Ms. Pavloska jumped up and ran away from Mr. Piccolo, telling him "No, no, no." She was deeply disturbed and humiliated by the interaction. Ms. Pavloska heard a housekeeping employee in the hallway and quickly ran out into the hallway, out of breath and terrified, to ask the housekeeping employee to come into the room with her to help look for the necklace in order to have another person present with Mr. Piccolo.

45.     Later, Ms. Pavloska spoke with another colleague about the incident. This colleague described a similar interaction with Mr. Piccolo, when they were alone together in a hotel room and where Mr. Piccolo attempted to forcibly have sex with her as well.

46.     Soon thereafter, and through the present, Mr. Piccolo began publicly humiliating Ms. Pavloska to guests and co-workers by calling her a "labor whore."

47.     Because her superiors had gaslighted her at every turn, Ms. Pavloska did not trust her immediate managers to fix these problems. Instead, in early April 2024, Ms. Pavloska met with an Executive Vice President for the Taj Hotel group. Specifically, Ms. Pavloska met with Prabhat

Verma, the Executive Vice President of Operations, South India, International & Expressions, who was visiting the Pierre Hotel to review its operations.

48.    Ms. Pavloska told Mr. Verma about all of the incidents described above – including, but not limited to, that Mr. Piccolo had exposed himself to her, that Mr. Piccolo tried to have sex with her in a hotel room, that Mr. Piccolo routinely trespassed in co-op apartments to have sex in them, that her superiors waved a picture of a naked colleague in her face, and that all of her complaints about this to her superiors had been ignored. Ms. Pavloska also presented video and audio recordings to Mr. Verma to support her complaints.

49.    In response, Mr. Verma did nothing to curb Mr. Piccolo's behavior or to remedy the incredibly hostile work environment at the Pierre Hotel. Instead, Mr. Verma offered to bribe Ms. Pavloska, and told her that he could give her a higher salary or position if she kept quiet about her complaints. Ms. Pavloska was appalled and told Mr. Verma that all she wanted was for the harassment to stop and for the Pierre Hotel to reassert itself as the vanguard of excellent customer service. However, Mr. Verma told her that he could not do anything about Mr. Piccolo because if the co-op found out that Mr. Piccolo was trespassing in the apartments it would cancel the contract and the Taj Hotel group would lose its ability to manage and run the Pierre Hotel. Mr. Verma told Ms. Pavloska that she should not tell anyone about her allegations (or show them her video and audio evidence) because if she did the Hotel could be at risk. Ms. Pavloska begged Mr. Verma to stop the sexual harassment and hostile work environment.

50.    Mr. Verma did nothing to stop Mr. Piccolo from continuing to harass Ms. Pavloska and other co-workers. Instead, Defendant retaliated against Ms. Pavloska for raising these issues. Defendant began punishing Ms. Pavloska and harassing her in various ways in retaliation for complaining.

51.    For example, in May 2024, Mr. Corkery verbally berated Ms. Pavloska during a large group presentation, throwing papers on the ground and yelling at her to "leave the fucking phone alone!" after Ms. Pavloska referred to her phone during the presentation. He then screamed "Fuck! Fuck! Fuck!" at her while the entire group looked on.

52.    A week later, Mr. Corkery changed Ms. Pavloska's schedule without checking with her and gave her weekend shifts on which he knew she could not work. Mr. Corkery had never done this before, and during her entire tenure at the Pierre Hotel Ms. Pavloska's schedule had never been unilaterally changed before. Ms. Pavloska protested this change, and Mr. Corkery exploded at her, slamming a door so hard that it broke the wall behind it.

53.    In early June, Ms. Pavloska heard about many rumors and accusations from front desk team members that she and Mr. Piccolo were sleeping together. Ms. Pavloska approached Mr. Corkery and Mr. Piccolo to complain about these rumors and the harassment she was facing from her co-workers. They told her to "stop making stuff up."

54.    Around this time, Mr. Corkery instructed Ms. Pavloska to help him curb some misbehavior among the Front Desk team and to let him know if any of the team members were not comporting themselves up to the standards of the Pierre Hotel. Ms. Pavloska documented many team members disobeying the hotel's policies – including not abiding by the dress code, drinking alcohol during shifts, and sleeping during shifts – by photographing the various infractions she encountered. Ms. Pavloska shared her photographs and notes about violations of the company with Mr. Corkery.

55.    In. an attempt to completely destroy Ms. Pavlovska's standing with her working team, Mr. Corkery intentionally sent the photographs to the front desk team, informing them that Ms. Pavloska had been photographing them.

56.    Not surprisingly, soon after many of the front desk team members lodged fabricated complaints with HR about Ms. Pavloska, including that she called someone "dumb" and that she was giving too much direction to someone whom she was not required to manage.

57.    On June 11, 2024, the Pierre retaliated against Ms. Pavloska for her complaints by suspending her while HR did an investigation of the front desk team members' complaints. Defendant scheduled a meeting between Ms. Pavloska and HR on June 13 to discuss all of the complaints against her.

58.    Later on June 11, Ms. Pavloska met with the Abnash Kumar, the new and current Hotel Manager at the Pierre Hotel. Ms. Pavloska complained to Mr. Kumar about all of the things that she had told Mr. Verma. In addition, Ms. Pavloska complained that she was being retaliated against by the company. Mr. Kumar told her not to tell anyone about her allegations against Mr. Piccolo. Specifically, Mr. Kumar told Ms. Pavloska not to tell anyone in HR about the sexual harassment or about Mr. Piccolo trespassing in the co-op apartments.

59.    On June 12, Ms. Pavloska spoke with Karambir Kang, the Area Director for the USA Region for the Taj Hotel group and told him that she had serious complaints to make about her treatment at the Pierre Hotel. On June 13, Ms. Pavloska met with Mr. Kang and told him everything that she had told Mr. Kumar, including her complaints about sexual harassment and Mr. Piccolo's illegal activities. Mr. Kang told Ms. Pavloska not to tell anyone about these complaints and that he would "fix" the situation and that Ms. Pavloska "should go home and rest." Mr. Kang has done nothing to "fix" this situation, and Defendant continues to retaliate against Ms. Pavloska.

60.     After this conversation, Ms. Pavloska felt completely lost, alone, and defeated. She had tried all internal avenues to remedy Defendant's discrimination and retaliation and was told to keep quiet at every step.

61.     On June 13, Ms. Pavloska came into the office early to print documents and other evidence related to the meeting that day with the HR director. She ran into Mr. Piccolo near her office who told her she could not be on the premises, and Ms. Pavloska protested that she was there for the meeting. Mr. Piccolo told her she had to wait outside before the meeting began. Ms. Pavloska objected, but Mr. Piccolo raised his voice to her, telling her to "leave now." Mr. Piccolo then assaulted Ms. Pavloska, grabbing her by the shoulders and yanking her towards the door. Mr. Piccolo dragged her from the office while repeatedly telling her: "I'm done with you, I'm done with you." Mr. Piccolo then called Mr. Hommerich, who told Ms. Pavloska to finish printing her documents and then leave the premises before her meeting. As Ms. Pavloska got up to leave, Mr. Hommerich menacingly told Ms. Pavloska, "I'm so happy that this is happening to you because you talk too much." Mr. Hommerich humiliated Ms. Pavloska, who left the building in tears while she waited for her meeting with HR to begin.

62.     During the meeting, Ms. Pavloska denied the veracity of the complaints the front desk staff made against her and complained to HR about her co-workers falsely gossiping about her and Mr. Piccolo having an affair.

63.     At the conclusion of the meeting on June 13, 2024 the HR director told Ms. Pavloska that she should go home and not come back to work until she heard from the HR team. On June 21, 2024, an HR representative called Ms. Pavloska and told her to stay home until further notice.

64.     On June 28, 2024, Ms. Pavloska's attorneys contacted her managers and other high-level executives at the Pierre Hotel and sent them a draft complaint alleging the facts contained in this complaint.

65.     In retaliation, on or around July 28, 2024, Defendant deactivated Ms. Pavloska's access to her work email.

66.     Defendant removed Ms. Pavloska from all work responsibilities for many weeks and instructed her to remain home.

67.     On August 6, 2024 – over seven weeks after Defendant instructed Ms. Pavloska to remain home and to wait to "hear" from Defendant – Defendant's attorneys contacted Ms. Pavloska's attorneys to inform them that Ms. Pavloska had not appeared for work on Monday, August 5 and would be subject to termination. Prior to this email, Ms. Pavloska had received no communication from Defendant and was completely unaware that Defendant had any expectation that she would return to work on August 5.

68.     Defendant claimed that they emailed Ms. Pavloska the previous week requesting that she return to work, but Defendant had deactivated her work email in July, so Ms. Pavloska had, reasonably, not been checking her work email.

69.     Defendant had Ms. Pavloska's phone number but did not call her to discuss her return to work.

70.     Defendant's attorneys had been in dialogue with Ms. Pavloska's attorneys regarding her allegations, but Defendant's attorneys had not informed her attorneys about Defendant's request that Ms. Pavloska return to work.

71.     Defendant's half-hearted attempt to "inform" Ms. Pavloska that she needed to return to work was an attempt to fabricate a reason to terminate Ms. Pavloska.

72.    Once Ms. Pavloska became aware of Defendant's request that she return to work at the Pierre Hotel, she also learned that Defendant had not reprimanded or fired her abuser and sexual harasser, Frank Piccolo. Mr. Piccolo is still head of security at the Pierre Hotel and is still Ms. Pavloska's superior. That is, Defendant demanded that Ms. Pavloska return to work in the same subordinate position to Mr. Piccolo, where she would be subject to his harassment, retaliation, and sexual advances.

73.    After discussing this situation with her medical providers, on August 7, Ms. Pavloska submitted to Defendant her request for mental health medical leave under the Family and Medical Leave Act ("FMLA").

74.    Ms. Pavloska's medical providers determined that needed leave from work to address the mental health issues caused by the harassment she suffered at the Pierre Hotel, including Defendant's insistence that she return to work with her abuser.

75.    Defendants failed to remedy its unacceptably discriminatory and hostile work environment during Plaintiff's FMLA.  Among other things, Mr. Piccolo remains employed by Defendant, Plaintiff would have to work with him if she returned to work, and, upon information and belief, Mr. Piccolo has not been punished in any way.

76.    Defendant has retaliated against Ms. Pavloska and has made her work life so unbearable that she was forced to quit. Defendant has constructively discharged Plaintiff from her employment. Defendant's actions are disgusting, unethical, and illegal.

77.    Defendant knowingly tolerated and cultivated a hostile work environment rife with sexual harassment and retaliation.

78.    Because of Defendant's actions, Ms. Pavloska has suffered severe emotional distress, including, without limitation, anxiety, turmoil, and depression.

79.     As a result of Defendant's actions Ms. Pavloska has suffered sleep loss, panic attacks, hair loss, stress, anxiety, depression, weight loss, and extreme mental health distress. Ms. Pavloska's doctors have prescribed her medication and ongoing therapy to deal with these symptoms and the trauma she has suffered as a result of Defendant's actions.

80.     Ms. Pavloska brings this suit to vindicate her civil rights and remedy the emotional distress and economic damages she suffered because of Defendant's unlawful and disgusting actions.

**FIRST CLAIM FOR RELIEF**
**Title VII of the Civil Rights Act ("Title VII")**
**42 U.S.C. 2000e, et seq. – Gender Discrimination**

81.     Plaintiff realleges and incorporates by reference all previous paragraphs.

82.     On August 2, 2024, Plaintiff filed a charge with the Equal Employment Opportunity Commission ("EEOC") alleging the same discrimination and retaliation facts as alleged herein. On August 6, 2024, the EEOC issued Plaintiff a right to sue letter. *See* Attached as Exhibit A. Thus, Plaintiff's Title VII claims are timely.

83.     In violation of Title VII, Defendant intentionally sexually harassed and discriminated against Plaintiff, created a hostile work environment based on Plaintiff's sex, and/or aided and abetted discrimination against Plaintiff on the basis of her sex.

84.     Defendant's discrimination was sufficiently severe or pervasive as to affect the terms of Plaintiff's employment.

85.     Defendant constructively discharged Plaintiff.

86.     Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

87.    As a direct and proximate consequence of Defendant's discrimination against Plaintiff, she has suffered, and continues to suffer, substantial monetary and non-monetary damages, including but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation, and anguish.

88.    As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for lost wages, back pay, front pay, and emotional distress; punitive damages; pre/post-judgment interest; attorneys' fees and costs; and such other legal and equitable relief as the Court deems just and proper.

## SECOND CLAIM FOR RELIEF
### Title VII of the Civil Rights Act ("Title VII")
### 42 U.S.C. 2000e, et seq. – Retaliation (Sex/Religion)

89.    Plaintiff realleges and incorporates by reference all previous paragraphs.

90.    In violation of Title VII, Defendant intentionally retaliated against Plaintiff for complaining about, among other things, being sexually harassed, Mr. Piccolo's unlawful trespassing for the purpose of having sex, Mr. Piccolo's religious discriminatory treatment of guests, and other outrageous and unlawful conduct occurring at the Pierre Hotel.

91.    Defendant retaliated against Plaintiff by, among other things, suspending her, pushing her out of the company, changing her work schedule, turning her co-workers against her, and constructively discharging her.

92.    Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

93.    As a direct and proximate consequence of Defendant's retaliation against Plaintiff, she has suffered, and continues to suffer, substantial monetary and non-monetary damages,

including but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation, and anguish.

94.    As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for lost wages, back pay, front pay, and emotional distress; punitive damages; pre/post-judgment interest; attorneys' fees and costs; and such other legal and equitable relief as the Court deems just and proper.

## THIRD CLAIM FOR RELIEF
### New York State Human Rights Law ("NYSHRL")
### N.Y. Exec. L. §§ 290 et seq. – Sex Discrimination/Sexual Harassment

95.    Plaintiff realleges and incorporates by reference all previous paragraphs.

96.    In violation of the NYSHRL, Defendant intentionally sexually harassed and discriminated against Plaintiff and/or aided and abetted discrimination against Plaintiff on the basis of her sex.

97.    Defendant's discrimination was sufficiently severe or pervasive as to affect the terms of Plaintiff's employment.

98.    Defendant constructively discharged Plaintiff.

99.    Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

100.    As a direct and proximate consequence of Defendant's discrimination against Plaintiff, she has suffered, and continues to suffer, substantial monetary and non-monetary damages, including but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation, and anguish.

101.     As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for lost wages, back pay, front pay, and emotional distress; punitive damages; pre/post-judgment interest; attorneys' fees and costs; and such other legal and equitable relief as the Court deems just and proper.

### FOURTH CLAIM FOR RELIEF
**New York City Human Rights Law ("NYCHRL")**
**N.Y.C. Admin. Code § 8-107 et seq. – Sex Discrimination/Sexual Harassment**

102.     Plaintiff realleges and incorporates by reference all previous paragraphs.

103.     In violation of the NYCHRL, Defendant intentionally sexually harassed and discriminated against and/or aided and abetted discrimination against Plaintiff on the basis of her sex.

104.     Defendant's discrimination was sufficiently severe or pervasive as to affect the terms of Plaintiff's employment.

105.     Defendant constructively discharged Plaintiff.

106.     Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

107.     As a direct and proximate consequence of Defendant's discrimination against Plaintiff, she has suffered, and continues to suffer, substantial monetary and non-monetary damages, including but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation, and anguish.

108.     As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for lost wages, back pay, front pay, and emotional distress; punitive damages; pre/post-judgment interest; attorneys' fees and costs; and such other legal and equitable relief as the Court deems just and proper.

**FIFTH CLAIM FOR RELIEF**
**New York State Human Rights Law ("NYSHRL")**
**N.Y. Exec. L. §§ 290 et seq. – Retaliation (Sex/Religion)**

109.    Plaintiff realleges and incorporates by reference all previous paragraphs.

110.    In violation of the NYSHRL, Defendant intentionally retaliated against Plaintiff for complaining about, among other things, being sexually harassed, Mr. Piccolo's unlawful trespassing for the purpose of having sex, Mr. Piccolo's religious discriminatory treatment of guests, and other outrageous and unlawful conduct occurring at the Pierre Hotel.

111.    Defendant retaliated against Plaintiff by, among other things, placing her on administrative leave, pushing her out of the company, changing her work schedule, turning her co-workers against her, and constructively discharging her.

112.    Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

113.    As a direct and proximate consequence of Defendant's retaliation against Plaintiff, she has suffered, and continues to suffer, substantial monetary and non-monetary damages, including but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation, and anguish.

114.    As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for lost wages, back pay, front pay, and emotional distress; punitive damages; pre/post-judgment interest; attorneys' fees and costs; and such other legal and equitable relief as the Court deems just and proper.

**SIXTH CLAIM FOR RELIEF**
**New York City Human Rights Law ("NYCHRL")**
**N.Y.C. Admin. Code § 8-107 et seq. – Retaliation (Sex/Religion)**

115.    Plaintiff realleges and incorporates by reference all previous paragraphs.

116.    In violation of the NYCHRL, Defendant intentionally retaliated against Plaintiff for complaining about, among other things, being sexually harassed, Mr. Piccolo's unlawful trespassing for the purpose of having sex, Mr. Piccolo's religious discriminatory treatment of guests, and other outrageous and unlawful conduct occurring at the Pierre Hotel.

117.    Defendant retaliated against Plaintiff by, among other things, placing her on administrative leave, pushing her out of the company, changing her work schedule, turning her co-workers against her, and constructively discharging her.

118.    Defendant's conduct was outrageous and malicious, was intended to injure, and was done with reckless indifference to Plaintiff's statutorily protected civil rights.

119.    As a direct and proximate consequence of Defendant's retaliation against Plaintiff, she has suffered, and continues to suffer, substantial monetary and non-monetary damages, including but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation, and anguish.

120.    As a result of Defendant's unlawful conduct, Plaintiff is entitled to compensatory damages, including but not limited to damages for lost wages, back pay, and emotional distress; punitive damages; front pay; post-judgment interest; attorneys' fees and costs; and such other legal and equitable relief as the Court deems just and proper.

**SEVENTH CLAIM FOR RELIEF**
**New York Labor Law ("NYLL")**
**N.Y. Lab. L. § 740 – Retaliation**

121.    Plaintiff realleges and incorporates by reference all previous paragraphs.

122.    In violation of the NYLL, Defendant intentionally retaliated against Plaintiff because she complained about acts that she reasonably believed to be violations of law.

123.    Defendant's conduct was willful, malicious, and/or wanton.

124.    Defendant retaliated against Plaintiff by, among other things, placing her on administrative leave, pushing her out of the company, changing her work schedule, turning her co-workers against her, and constructively discharging her.

125.    As a direct and proximate consequence of Defendant's retaliation against Plaintiff, she has suffered, and continues to suffer, substantial monetary and non-monetary damages, including but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation, and anguish.

126.    As a result of Defendant's retaliatory conduct, Plaintiff is entitled to recover back pay, front pay, punitive damages, post-judgment interest, attorneys' fees and costs, and such other legal and equitable relief as the Court deems just and proper.

## EIGHTH CLAIM FOR RELIEF
### Sexual Assault and Battery – Common Law

127.    Plaintiff realleges and incorporates by reference all previous paragraphs.

128.    Mr. Piccolo is Defendant's employee and agent.

129.    Defendant knowingly and/or recklessly allowed Mr. Piccolo to repeatedly intentionally touch Plaintiff in an unwanted sexual manner.

130.    Defendant knowingly and/or recklessly allowed Mr. Piccolo to repeatedly intentionally attempt or threaten to attempt to touch Plaintiff in an unwanted sexual manner that gave Plaintiff a reasonable apprehension of unwanted sexual contact.

131.    Defendant's conduct was willful, malicious, and/or wanton.

132.    As a direct and proximate consequence of Defendant's actions Plaintiff has suffered, and continues to suffer, substantial monetary and non-monetary damages, including but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation, and anguish.

133.    As a result of Defendant's conduct, Plaintiff is entitled to recover compensatory damages, punitive damages, post-judgment interest, and such other legal and equitable relief as the Court deems just and proper.

## NINTH CLAIM FOR RELIEF
### Assault and Battery – Common Law

134.    Plaintiff realleges and incorporates by reference all previous paragraphs.

135.    Mr. Piccolo is Defendant's employee and agent.

136.    Defendant knowingly and/or recklessly allowed Mr. Piccolo to repeatedly intentionally touch Plaintiff in an unwanted and harmful manner.

137.    Defendant knowingly and/or recklessly allowed Mr. Piccolo to repeatedly intentionally attempt or threaten to attempt to touch Plaintiff in an unwanted sexual manner that gave Plaintiff a reasonable apprehension of unwanted and harmful physical contact.

138.    Defendant's conduct was willful, malicious, and/or wanton.

139.    As a direct and proximate consequence of Defendant's actions Plaintiff has suffered, and continues to suffer, substantial monetary and non-monetary damages, including but not limited to, emotional distress, physical pain and suffering, damage to Plaintiff's good name and reputation, lasting embarrassment, humiliation, and anguish.

140.    As a result of Defendant's conduct, Plaintiff is entitled to recover compensatory damages, punitive damages, post-judgment interest, and such other legal and equitable relief as the Court deems just and proper.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff demands judgement against Defendant as follows:

A.    Damages in an amount to be determined by the trier of fact;

B.    Reasonable attorneys' fees, interest, and costs of suit;

C.    Pre-judgment and post-judgment interest, as provided by law; and

D.    Such other and further legal and equitable relief as this Court deems necessary, just

and proper.

Dated:  New York, New York          Respectfully submitted,
        November 14, 2024
                                    JOSEPH & KIRSCHENBAUM LLP


                                    By:    *s/D. Maimon Kirschenbaum*
                                        D. Maimon Kirschenbaum
                                        Michael DiGiulio
                                        32 Broadway, Suite 601
                                        New York, NY 10004
                                        Tel: (212) 688-5640
                                        Fax: (212) 688-2548

                                    *Attorneys for Plaintiff*


## DEMAND FOR JURY TRIAL

Plaintiff hereby demands a jury trial on all causes of action and claims with respect to which she has a right to jury trial.